UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES HOVING,

        Plaintiff,   Case Number 07-15322
v.   Honorable David M. Lawson

TRANSNATION TITLE INSURANCE COMPANY,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS, AND SCHEDULING
CLASS CERTIFICATION MOTION HEARING**

The plaintiff, James Hoving, has brought this putative class action to challenge the practice of the defendant title insurance company of overcharging its premium on title insurance policies issued to mortgage lenders in transactions involving refinancing residential properties within two years of a previous loan where a mortgage title police was issued. The defendant has moved to dismiss the complaint on grounds of lack of standing failure to state a claim for which this Court may grant relief. The Court heard oral argument on the motion on April 9, 2008 and finds that the plaintiff has standing to assert the claims in the complaint, the cause of action based on the Michigan Consumer Protection Act is barred by the specific provision rendering the Act inapplicable to unlawful conduct regulated by the Michigan Insurance Code, and the other counts of the plaintiff's complaint state claims cognizable by this Court. Therefore, the Court will grant in part and deny in part the motion to dismiss and set a schedule for determining class certification.

I.

According to the complaint, plaintiff James Hoving refinanced his Brighton, Michigan residence on February 23, 2006. As part of the settlement procedure, Hoving was charged $1397.50

for a title insurance policy for the benefit of the mortgage lender with a face value of $345,000 Defendant Transnation Title Insurance Company (Transnation) issued the policy and charged the premium. This refinancing apparently occurred less than two years after a prior financing transaction on the same property where title insurance was purchased. the plaintiff alleges that the States of Michigan, Arizona, Colorado, Maryland, Minnesota, Missouri, New Jersey, Tennessee and Washington all have laws that require insurance companies to file with the state insurance commissioner their title insurance rates. The plaintiff complains that defendant Transnation made its filing with the state of Michigan under state insurance law in which it committed itself to charging only fifty percent of its prior policy premium if the second transaction was within two years of a previous policy issuance.

The plaintiff's complaint seeks relief for himself and for a class of plaintiffs for the defendant's alleged overcharge. He defines the proposed class as follows:

> Persons in the states of Michigan, Arizona, Colorado, Maryland, Minnesota, Missouri, New Jersey, Tennessee and Washington who, in connection with a mortgage refinancing, paid a title insurance premium for a Transnation title insurance policy the amount of which exceeded the rate on file in those states and/or exceeded a lower, reissue rate for which such persons qualified.

Compl. ¶ 14. The complaint alleges three counts and an amount in controversy over $5 million. Count I alleges a violation of the Michigan Consumer Protection Act and the "substantially similar laws of Class states Arizona, Colorado, Maryland, Minnesota, Missouri, New Jersey, Tennessee and Washington." Count II alleges unjust enrichment for the inequitable retention of insurance premiums. Count III seeks a declaration that the rate charged for the reissued mortgage title policy is excessive and an injunction barring the practice of overcharging for policies eligible for the

reissue rate. The complaint expressly disavows that it is alleging a violation of the state insurance code.

II.

The defendant has filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). It claims that the plaintiff lacks standing to assert the rights of others under state laws other than Michigan's, the Michigan Consumer Protection Act does not allow for a cause of action when other regulatory schemes are in place (including actions deemed illegal by the state insurance code), and the plaintiff cannot recover under an unjust enrichment theory. The plaintiff contests each of these arguments.

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* Federal Rule of Civil Procedure 8(a) requires that the complaint give the defendant fair notice of the

nature of the claim and the factual grounds upon which it rests. *Twombly*, 127 S. Ct. at 1964. Therefore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detail factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted) (alteration in original). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (1984)); *see also Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

A.

The defendant first observes that plaintiff Hoving's claims are centered *exclusively* on his refinancing of a Michigan residence under a Michigan contract governed by Michigan law, and therefore, The defendant argues, Hoving has no standing to bring claims arising under the laws of other states. The plaintiff responds that the circumstances would change if his proposed class were certified, but the defendant cites some authority for the argument that standing should be determined before turning to class certification, which precludes consideration of unnamed potential class members. *See Parks v. Dick's Sporting Goods, Inc.*, 2006 WL 1704477, *2 (W.D.N.Y. June 15, 2006); *Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154, at *1 (E.D.N.Y. Sept. 25, 2007).

Of course, "individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Sierra Club v. Morton*, 405 U.S. 727 (1972)). Although "[a] potential

class representative . . . cannot acquire . . . standing merely by virtue of bringing a class action, . . . . 'once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants.'" *Fallick*, 162 F.3d at 423 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 517 (6th Cir. 1976)).

The Supreme Court has spoken on at least two occasions to the issue of which determination should come first, standing or class certification. In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the district court certified a class of plaintiffs who had been exposed to asbestos by the defendants over the class members' objections to the adequacy of representation. The objectors to the class argued that "exposure-only claimants lack standing to sue" because they have not yet suffered an injury compensable by the proposed settlement and because they failed to meet the amount in controversy requirements of diversity jurisdiction. The Court concluded that addressing the requirements of Rule 23 before deciding the standing issues was appropriate: "We agree that the class certification issues are dispositive; because their resolution here is logically antecedent to the existence of any Article III issues, it is appropriate to reach them first." *Amchem Prod.*, 521 U.S. at 612 (citations, quotations, and alterations omitted).

The Court once again applied the "logical antecedent" test in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), which also involved an asbestos injury settlement class. The Court stated:

> The nub of this case is the certification of the class under Rule 23(b)(1)(B) on a limited fund rationale, but before we reach that issue, there are two threshold matters. First, petitioners call the class claims nonjusticiable under Article III, saying that this is a feigned action initiated by Fibreboard to control its future asbestos tort liability, with the "vast majority" of the "exposure-only" class members being without injury in fact and hence without standing to sue. Brief for Petitioners 44-50. Ordinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83,

> 88-89 (1998). But the class certification issues are, as they were in *Amchem*, "logically antecedent" to Article III concerns, 521 U.S., at 612, and themselves pertain to statutory standing, which may properly be treated before Article III standing, *see Steel Co.*, *supra*, at 92, 118 S.Ct. 1003. Thus the issue about Rule 23 certification should be treated first, "mindful that [the Rule's] requirements must be interpreted in keeping with Article III constraints. . . ." *Amchem*, *supra*, at 612-613.

*Id.* at 830-31.

As the parties have observed, "there is a split among the federal courts concerning whether the *Ortiz* 'logical antecedent' language creates a rule or an exception to the timing consideration for standing challenges in class action litigation." Linda S. Mullenix, *Standing and Other Dispositive Motions after Amchem and Ortiz: The Problem of "Logically Antecedent" Inquiries*, 2004 Mich. St. L. Rev. 703, 729 (2004). *Compare Parks v. Dick's Sporting Goods, Inc.*, 2006 WL 1704477, at *3 (W.D.N.Y. June 15, 2006) (holding that "the Court must look at the named plaintiff or plaintiffs, not the unnamed class members, and since here, there is just one named plaintiff, who lacks either statutory or Article III standing to sue for violations of state laws other than those of New York.), *with Jepson v. Ticor Title Ins. Co.*, 2007 WL 2060856, at *2 (W.D. Wash. May 1, 2007) (stating that the "class-certification issue is logically antecedent because there is no question that the proposed class would have standing to assert non-Washington claims if it were certified"). The Seventh Circuit appears to have come down on the side of certification before standing in *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002), when it considered whether a class action could be brought by plaintiffs alleging unconstitutional practices on behalf of individuals against counties other than the ones in which the named plaintiffs live. The court decided that the propriety of class certification should be considered prior to a decision on standing, and remanded to the district court to develop a factual record. *Id.* at 680-81. It noted that "[t]he certification of a class changes the standing aspects of a suit." *Id.* at 680. That result is echoed in other published district court

decisions. *See In re Buspirone Patent Litigation*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) (opting to decide class certification issues before ruling on a standing challenge grounded in the lack of named plaintiff to assert claims based in other states' laws because "[i]f certification is granted, the proposed class would contain plaintiffs who have personal standing to raise claims under the laws governing purchases in all of the fifty states"); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 263 F. Supp. 2d 172, 193-94 (D. Mass. 2003) (citing *Ortiz* and deferring decision about whether the representative plaintiffs had standing).

The Sixth Circuit has not addressed the issue directly, but the case of *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998), supports the plaintiff's position. In that case, the court held that "an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." *Id.* at 422. The Court reasoned that

> once the district court correctly determined that Fallick had standing to bring suit under ERISA against Nationwide with respect to its application of reasonable and customary limitations to its determination of medical benefits-a methodology which, by Nationwide's own admission, it employs in all the benefits plans which Fallick wishes to include under the aegis of the proposed class-the court should then have analyzed whether Fallick satisfied the criteria of Rule 23 with respect to the absent class members.

*Id.* at 423.

The Court finds no reason not to apply the same rationale to the present case. Even if the plaintiff has standing to assert claims in this jurisdiction (which is not challenged here), to proceed as a representative of a class he must still establish that his claim is typical of those individuals whose claims arise under the laws of other states and he can represent those individuals adequately. *See* Fed. R. Civ. P. 23(a). That determination must be made before the Court can decide whether

the plaintiff has standing to maintain a class action as the named plaintiff; and therefore the decision on class certification is logically antecedent to the determination of standing. For example, with the facts presented in the complaint, the plaintiff certainly could not file an individual suit only seeking relief under Arizona law; however, a member of his proposed class from that state likely would have suffered an injury that could be redressed under Arizona law. The defendant has not seriously challenged the plaintiff's standing to assert his claims arising from the alleged overcharge on his own refinancing transaction. The question whether he has standing to proceed as a class representative will be subsumed in the class certification decision, but it the argument does not support the defendant's requested dismissal presently.

B.

The defendant next argues that count I of the complaint based on the Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws § 445.901, *et seq.*, should be dismissed because of language in the Act itself that makes the law inapplicable to the claims advanced by the plaintiff. The MCPA prohibits "Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," which includes "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have," Mich. Comp. Laws § 445.903(1)(c), and "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." Mich. Comp. Laws § 445.903(1)(s). However, the MCPA does not apply to any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws §

445.904(1)(a). And the "act does not apply to or create a cause of action for an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by chapter 20 of the insurance code of 1956, 1956 PA 218, MCL 500.2001 to 500.2093." Mich. Comp. Laws § 445.904(c). "The burden of proving an exemption from this act is upon the person claiming the exemption." Mich. Comp. Laws § 445.904(1)(d).

With respect to the exemption under the MCPA relating to conduct rendered illegal by the insurance code, the Michigan courts appear to read the language broadly. In *Logan v. Blue Water Title Co.*, 1996 WL 33356941, at *1 (Mich. Ct. App. Oct. 1, 1996), an unpublished decision, the state court of appeals held that the plaintiff could not maintain an action under the MCPA against the defendants, who were "unquestionably engaged in the business of insurance," because regulation of the alleged deceptive practices fell within the statutory authority granted to the state insurance commissioner.

The defendant points to a section in Chapter 24 of the Michigan Insurance Code, which it believes encompasses the practice challenged by the plaintiff in this case. The provision reads:

> Every insurer shall file with the commissioner every manual of classification, every manual of rules and rates, every rating plan, and every modification of any of the foregoing that it proposes to use. Every such filing shall state the proposed effective date thereof and shall indicate the character and extent of the coverage contemplated.

Mich. Comp. Laws § 500.2406(a). The plaintiff insists that he is not basing his action on a violation of this statute, and therefore the exemption in the MCPA does not apply. However, the language in the MCPA does not require that the plaintiff allege a violation of Chapter 20. Instead, the contested "method, act, or practice" simply must be unlawful under Chapter 20. Mich. Comp. Laws § 445.904(c). This conclusion is bolstered by the use of the phrase "*does not apply to* or create a cause of action." *Ibid.* The use of the words "apply to" indicates that the exclusion meant to

encompass claims based on a "method, act, or practice" deemed unlawful under the insurance code, regardless of whether the claim actually is brought under the code itself.

Here, the plaintiff contends that the defendant charged rates in excess of those scheduled in the manual on file with the insurance commissioner. Under Chapter 20 of the insurance code, the commissioner of insurance is permitted to abate any "act or practice [that] is unfair or deceptive" by an insurance company, such as departing from the schedule of rates. Mich. Comp. Laws § 500.2043(1). Any act that could be deemed "unfair or deceptive" (like the plaintiff's claim here) is exempted from the MCPA as long as the act was performed by an insurance company subject to regulation by the insurance commissioner. The plaintiff attempts to distinguish unfair policies from deceptive rates, but this effort is unavailing because the exemption speaks to a "method, act or practice," which plainly encompasses both policies and rates. The Court finds, therefore, that count I of the complaint fails to state a claim under the MCPA and must be dismissed.

C.

The defendant next contends that the plaintiff is not entitled to recover on an unjust enrichment theory because the complaint merely alleges an inequity without supporting facts. The defendant also argues that no inequity can be alleged credibly because the lender is made aware of its entitlement to a lower reissue rate for mortgage title policies through a booklet furnished to each borrower as required by 12 U.S.C. § 2604 and 24 C.F.R. § 3500.6, which discloses the potential availability of a reissue rate.

This argument misses the mark because the focus of the plaintiff's unjust enrichment claim is the borrower, not the lender. Although the title policy premium is charged to the lender (for whose benefit the policy is issued), that charge is passed through directly to the borrower. A

borrower who is made aware of the theoretical possibility of a lower title policy premium but is charged a higher amount in her own transaction may still be the victim of an inequity. It would be a rare customer indeed who actually was aware of an entitlement to a lower premium but elected to pay a higher one. Under Michigan law, unjust enrichment is established by proof of "'the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain.'" *Michigan Educ. Employees Mut. Ins. Co. v. Morris*, 460 Mich. 180, 198, 596 N.W.2d 142, 151 (1999) (quoting *Moll v. Wayne Co.*, 332 Mich. 274, 278-279, 50 N.W.2d 881 (1952)). There must be more than a benefit received by a party, the party "is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652, 663 (1991).

"[I]f reasonable minds could differ" whether the alleged retention of benefit is unjust, then dismissal is inappropriate. *Kammer Asphalt Paving Co., Inc. v. East China Tp. Schools*, 443 Mich. 176, 186, 504 N.W.2d 635, 640 (1993). Numerous cases have held that a benefit may be unjustly obtained by a defendant through an intermediary, especially if there is some wrongdoing on the defendant's part. *See, e.g., ibid.*; *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 729 N.W.2d 898 (2006) (contractor held liable to subcontractor's supplier when subcontractor failed to pay).

Here, if the defendant charged more than it was permitted, the distribution of the booklet required under a section of the Real Estate Settlement Procedures Act will not attenuate the inequity that would result from permitting the defendant to keep the money.

The defendant also mentions in a footnote its brief that the existence of an express contract precludes an unjust enrichment claim, and reasons that because the title insurance policy is an

-11-

express contract governing the rates, the plaintiff cannot bring such a claim. However, if the Court assumes that the policy constitutes a contract dealing with the price, that contract is unenforceable if the plaintiff's claim is correct because the contract would violate the state insurance regulations. The insurance policy itself, therefore, does not preempt the unjust enrichment claim.

D.

The defendant's argument that count III of the complaint should be dismissed is entirely dependent upon the success of its arguments that the other two counts ought not survive. The defendant also argues that Count III is legally deficient because it does not allege imminent harm or continuing irreparable injury. These arguments lack merit as well.

Declaratory relief may be sought "[i]n a case of actual controversy . . . whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Injunctive relief may be had "upon showing 1) a continuing irreparable injury if the court fails to issue the injunction, and 2) the lack of an adequate remedy at law." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998). The pleadings allege sufficient facts to satisfy these requirements.

III.

The Court rejects the defendant's argument that the plaintiff lacks standing to proceed. The Court finds that count I of the complaint based on the Michigan Consumer Protection Act fails to state a claim and must be dismissed, but the plaintiff may proceed based on the rest of the complaint. A schedule must be established to address the class certification issue.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt #11] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that count I of the complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiff must file his motion for class certification on or before **August 15, 2008**.

It is further **ORDERED** that the defendant's answer to the class certification motion must be filed on or before **September 2, 2008**.

It is further **ORDERED** that discovery may commence immediately, but it shall be limited to class certification issues. Discovery must be relevant to the issues of class certification, including numerosity, typicality, commonality, adequacy of representation, and the definition of a proposed class.

It is further **ORDERED** that oral argument on the class certification motion shall be held on **September 29, 2008**, **at 3 p.m.**

                                                  s/David M. Lawson
                                                  DAVID M. LAWSON
                                                  United States District Judge

Dated: April 14, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 14, 2008.

                        s/Felicia M. Moses
                        FELICIA M. MOSES