UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES HOVING,

                Plaintiff,                                  Case Number 07-15322

v.                                              Honorable David M. Lawson

LAWYERS TITLE INSURANCE COMPANY,

                Defendant.

_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO AMEND ITS ANSWER, DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, AND DIRECTING PLAINTIFF TO SHOW CAUSE

      The plaintiff, James Hoving, has brought this putative class action to recover overcharges for himself and others similarly situated when the defendant allegedly charged the full premium rate for mortgage title insurance instead of applicable discounted rates when the new mortgage loan was made for the purpose of refinancing residential properties within two years of a previous loan.  The plaintiff has moved to certify a multi-state class of such individuals based on a theory of unjust enrichment.  The defendant has moved to amend its answer to include allegations that the named plaintiff had conveyed his residence to a trust and therefore did not have authority to remortgage the property, he signed a false affidavit at the closing failing to mention the prior mortgage, and he did not exhaust his administrative remedies.  The Court heard oral argument on the motions on September 30, 2008.  The Court now finds that the proposed class could be certified appropriately under Federal Rule of Civil Procedure 23(b)(2) and (3), but the plaintiff is not an appropriate class representative; and the defendant ought to be able to amend its answer to assert all the proposed new allegations except the failure-to-exhaust-administrative-remedies defense.  Therefore, the Court will deny the motion to certify the class and grant in part the defendant's motion to amend its answer.

I.

Transnation Title Insurance Company, to which defendant Lawyers Title is the successor in interest, was in the business of selling title insurance to guarantee the validity of conveyances of real estate, and it operated in several states. The title insurance industry is closely regulated by state laws, which, in the class states, require title insurers to submit a manual outlining the rates to be charged to a state agency. The rate manuals in the class states provide that a homeowner may receive a discount on a title policy issued to a mortgagee when the homeowner refinances and recently has obtained title insurance on the same property. However, these discounts are not always given. According to the plaintiff's complaint, the overcharges are the result of

> Defendant's uniform and customary business practices of: (a) overcharging consumers for title policies by failing to accord them discounted reissue rates in connection with qualifying refinance transactions, and; (b) failing to inform such customers that they qualify (or may qualify) for such discounted rates.

Compl. ¶ 35.

The plaintiff, James Hoving, purchased a residence in Brighton, Michigan on June 21, 2004. He financed this purchase with a $300,000 mortgage loan from Synergy Mortgage Co., and he simultaneously obtained a $35,000 home equity line of credit from Huntington Bank. Synergy obtained title insurance on the loan underwritten by an issuer other than the defendant. Huntington did not obtain any title insurance, which the defendant claims is typical for home equity loans.

The plaintiff then refinanced the home in early 2006. He borrowed $345,000 from Homecomings Financial Network, Inc., which engaged Unified Title and Settlement, an agent authorized to sell Transnation title insurance, to process the loan. The transaction began in late 2005, following which Unified prepared and sent a title insurance commitment to Transnation's branch office on February 21, 2006. Transnation then issued its title insurance commitment and a

title insurance policy for the benefit of Homecomings Financial Network, Inc., apparently charging the plaintiff the full, non-discounted premium.

Hoving alleges that the defendant has engaged in a practice of overcharging refinance customers, and he has moved for class certification of the following class:

> Persons in the states of Michigan, Arizona, Colorado, Missouri, New Jersey and Washington (the "Class States"), who, in connection with a mortgage refinancing, paid a title insurance premium for a Transnation title insurance policy the amount of which exceeded the rate on file in those states for mortgage refinancing policies.

Pl.'s Mot. at 1. The class would exclude the defendant and any of its officers, directors or employees, and members of any class or classes previously certified.

The defendant points out that due to the plaintiff's prior conduct concerning the property, it is far from clear that the plaintiff was entitled to the discounted rate at the time he refinanced the property. The title history shows that after the plaintiff bought his house, he purported to create an irrevocable trust on September 1, 2004 entitled the "Hoving Family Trust" and deeded his property to D. Scott Heineman and Kurt F. Johnson of Union City, California, the two trustees. This was apparently done on the advice of his sister, an attorney with the military. Hoving explained that he conveyed his property to a trust because he did not have a will, and he wanted to protect his property from his brother when he died. Hoving testified at his deposition that he ordered a do-it-yourself trust packet online, and he filled out the papers and sent them with a fee payment to an address according to the instructions. He said he kept no copies or record of the payment.

As it turns out, the trustees to whom the plaintiff irrevocably conveyed his property were part of an entity called the Dorean Group. It is not clear who D. Scott Heineman and Kurt F. Johnson are, but the plaintiff never met or heard of them before he conveyed his property to them, and it appears that they were both convicted on several dozen counts of mail fraud in the Northern District

of California (case no. 05-611) following a jury trial in which they represented themselves and have been sentenced to lengthy terms of imprisonment.  On January 6, 2005, Heineman recorded a "Discharge of Mortgage" that purports to certify that the Synergy mortgage was fully paid and could be discharged.  Kevin Lounds, West Michigan Service Center Manager of LandAmerica Financial Group, submitted a declaration where he explains that the discharge would look genuine to a non-attorney, but it did not appear valid to him.  Lounds's declaration is subject to a motion to strike on the grounds that he was never disclosed as a Rule 30(b)(6) witness, but the Court does not consider his declaration as relevant to the issues raised in the class certification motion, mooting the motion to strike.

On August 16, 2005, Mr. Hoving signed an "Affidavit in Support to Correct Mistake" that purports to "revoke [his] signature, for cause, off of the trust. . . ."  Pl.'s Mot., Ex. 4, HOVING00000267.  On August 17, 2005, Mr. Hoving signed a quit claim deed that purports to convey the property from the Hoving Family Trust back to Mr. Hoving.  Although Mr. Hoving signed as trustee of the trust, it does not appear that Mr. Hoving in fact was a trustee of the trust. The plaintiff testified that when he sought to refinance the property, "they wanted me to have [the land] back in my name before they would do that. . . ."  Def.'s Resp. A160, Hoving Dep. 99.  He submitted a declaration that states that he took the property out of the trust when he "found out that the trust company was a fraud."  Pl.'s Mot., Ex. 8, Hoving Decl. ¶ 4.

Apparently, the Synergy mortgage was sold to CitiMortgage, which issued a statement that as of July 20, 2005, the property was encumbered with a mortgage with a principal balance of $296,401.12.  However, it appears that the Synergy mortgage did not show up on the new title commitment, perhaps due to the fraudulent discharge filed by Mr. Hoving's "trustee."  At the

-4-

closing of the refinancing transaction in early 2006, the plaintiff signed an affidavit stating that he is the owner of the property, that he was "in sole possession of said property, and there are no unrecorded deeds, mortgages, leases, easements, land contracts for sale, purchase agreements or options. . . ." Def.'s Resp. at A39 ¶ 3. He also averred:

> There are no other mortgages, equity loans, revolving credit loans, bridge loans, remodeling loans, judgment liens or tax liens affecting said property, except as set forth in the above-referenced title commitment.

Def.'s Resp. at A39 ¶ 9.

Based on the $345,000.00 mortgage, the plaintiff was charged a premium of $1,397.50, which was a correct new-issue rate under the rate manual the defendant had filed with the State of Michigan, but it was more than the discount rate. On February 23, 2006, the plaintiff closed on the refinancing loan. The plaintiff declares that he was never told that he was entitled to a discount and was "never shown or asked to sign a 'Notice of Title Policy Premium Discounts." Pl.'s Mot., Ex. 8, Hoving Decl. ¶ 3.

Marcy Welburn, one of the individuals designated by the defendant as a Rule 30(b)(6) witness, testified that Mr. Hoving was refinancing the mortgage and the refinance credit in the Transnation rate manual was applicable to him. However, he did not get the refinance rate, which, in Welburn's eyes, shows that "Transnation made a mistake." Pl.'s Mot., DEPAPPEND0263, Welburn Dep. at 168. She testified that the agent of Transnation and a branch office of Transnation had a responsibility to obtain this information. However, she has since changed her testimony and now states that it is unclear whether the plaintiff was entitled to a discounted premium rate, and that it is unclear whether it was a mistake to charge him the full price. In light of the deed to the Hoving Family Trust and the uncertainty of the deed back to Mr. Hoving, she is unsure whether Mr. Hoving

-5-

had the authority to take a mortgage out on the property. She also believes that the defendant did not give Mr. Hoving a reduced rate because a mortgage discharge was recorded, and she states that "Mr. Hoving's own actions caused this to have occurred." Def.'s Resp., A247. She now states, "Until Transnation and I know more facts about why Mr. Hoving deeded his property to those trustees in 2004, whether those trustees changed, why they recorded the attached Discharge of Mortgage instrument, what role Mr. Hoving played in planning and recordation of the Discharge of Mortgage instrument, neither I nor Transnation can agree that Mr. Hoving was entitled to a refinance credit under the Transnation rate manual." *Ibid.*

Based on the foregoing, it is apparent to the Court that Mr. Hoving is not the ideal plaintiff to press a claim on behalf of a class of individuals who say they were overcharged for title insurance premiums on refinanced mortgage loans. The present case was identified as a companion case to one filed earlier by JoEllen Skytta, who brought a similar claim against the defendant in case number 07-12125. However, that case amounted to a false start when it was determined that Ms. Skytta was not eligible for a reissue rate, so Ms. Skytta voluntarily dismissed the complaint.

On December 13, 2007, the plaintiff filed his complaint alleging two counts: violation of the Michigan Consumer Protection Act and unjust enrichment. The defendant moved to dismiss, arguing that the allegations failed to state a claim and that the plaintiff lacked standing to pursue claims of plaintiffs in other states. On April 14, 2008, the Court issued an opinion and order dismissing the Consumer Protection Act count on the defendant's motion. *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008). The Court established a deadline for the class certification motion and permitted the parties to conduct discovery on issues relating to class certification. On April 28, 2008, the defendant filed an answer to the complaint. On August 20,

-6-

2008, the defendant filed a motion seeking leave to amend its answer, which the plaintiff opposes. Two days later, the plaintiff filed his motion for class certification.

## II.

According to Federal Rule of Civil Procedure 23, a matter may proceed as a class action in the name of representative parties if (1) the class is so numerous that joinder of all members is impracticable;  (2) there are questions of law and fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (citing Fed. R. Civ. P. 23(a)); *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 268 (E.D. Mich. 2001), *aff'd* 383 F.3d 495 (6th Cir. 2004). A class must meet all of the above prerequisites plus one of those listed in Federal Rule of Civil Procedure 23(b) to be certified. *Amchem Prods., Inc.*, 521 U.S. at 614; *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc).  The movant bears the burden of establishing that all prerequisites for class certification are satisfied. *Thompson v. County of Medina*, 29 F.3d 238, 241 (6th Cir. 1994).

The plaintiff argues that it has satisfied all the requirements of Rule 23(a) and asks the Court to certify the class under Rule 23(b)(2) and (3), seeking damages and declaratory relief.  The defendant contends that the plaintiff has not established numerosity because there is no way to prove who was overcharged short of conducting a file-by-file review of each refinancing transaction (and therefore the number of class members remains speculative), commonality and typicality cannot be shown because each transaction is unique, and Hoving is not a proper class representative because his efforts at setting up a do-it-yourself trust have bollixed up the chain of title on his property so that Transnation can argue that 1) its charge was not unjust under the facts of the case; 2) Hoving

-7-

is estopped from arguing that he's entitled to a lower rate; 3) Hoving's claim is barred by unclean hands.  The defendant says that the plaintiff cannot meet the predominance and superiority requirements of Rule 23(b)(3) because the law of unjust enrichment varies among the class states and the defendant has a right to present equitable defenses, which could be different as to each putative class member.

As noted above, Rule 23 contains four prerequisites a plaintiff must satisfy to be eligible for a class action treatment:

> (1) the class [must be] so numerous that joinder of all members is impracticable;
> (2) there [must be] questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class; and
> (4) the representative parties [must be able to] fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 26(a); *see Amchem Prods.*, 521 U.S. at 613.  In the vernacular, these factors are known as the requirements of numerosity, commonality, typicality, and adequacy of representation in a class action.

In addition to the prerequisites of Rule 23(a), a class action must fit into one of the three subsections under Rule 23(b).  The plaintiff seeks a class on two of these subsections:

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

When reviewing a motion for class certification, the Court must conduct a "rigorous analysis" of the requirements under Rule 23. *Sprague*, 133 F.3d at 397 (quoting *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982)). The Court is not bound to accept the allegations on the face of the complaint as true, and should probe further into the facts when necessary to determine whether these requirements have been met. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) ("[O]rdinarily, the determination should be predicated on more information than the pleadings will provide."); *see also Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) ("The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it.").

Several courts has certified class actions for claims involving unjust enrichment against title insurance companies who were alleged to have overcharged for rates in connection with a refinancing. *Randleman v. Fidelity National Title Ins. Co.*, 251 F.R.D. 267, *amending* 247 F.R.D. 528 (N.D. Ohio 2008); *Alberton v. Commonwealth Land Title Ins. Co.*, 247 F.R.D. 469 (E.D. Pa. 2008), *disagreed with on other grounds*, *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217 (3d Cir. 2008); *Slapikas v. First American Title Ins. Co.*, 250 F.R.D. 232 (W.D. Pa. 2008); *Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295 (E.D. Pa. 2007). At least one state court certified an unjust enrichment

-9-

class action under an analogous state rule.  *In re Coordinated Title Ins. Cases*, 784 N.Y.S.2d 919, 2004 WL 690380 (N.Y. Super. Ct. Jan. 8, 2004) (table).  One court, however, held that certification of the class was improper with regard to the unjust enrichment claim because it failed the predominance requirement of Rule 23(b)(3), but certified the class on an implied contract count. *Chesner v. Stewart Title Guar. Co.*, 2008 WL 553773 (N.D. Ohio Jan. 23, 2008).  Other courts have certified class actions regarding overcharges on legal theories other than unjust enrichment. *Mitchell-Tracey v. United General Title Ins. Co.*, 237 F.R.D. 551 (D. Md. 2006); *see also Dubin v. Sec. Union Title Ins. Co.*, 162 Ohio App.3d 97, 832 N.E.2d 815 (2005) (noting that the Ohio rule on class certification is identical to the federal rule and certifying class on what it considered "essentially . . . a claim of consumer fraud"); *Mitchell v. Chicago Title Ins. Co.*, 2003 WL 23786983 (Minn. Dist. Ct. Dec. 22, 2003) (failing to specifically identify the legal claim but suggesting it is one of fraud by silence).  And yet another court refused to certify a multi-state class alleging several theories of liability including unjust enrichment because of the difference among the laws in the class states.  *Woodward v. Fidelity Nat. Title Ins. Co.*, 2008 WL 5737364 (D.N.M Dec. 8, 2008).

### A. Rule 23(a) requirements

#### 1. Numerosity

The first prerequisite to class certification under Rule 23(a) is numerosity.  *Olden*, 203 F.R.D. at 268.  Although there is no strict numerical test to determine when the class is large enough or too numerous to be joined under the Federal Rules of Civil Procedure, *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976), "'substantial' numbers usually satisfy the numerosity requirement," *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (quoting *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996)).  The Court "may consider many factors, including 'class

size, ease of identification of members of the proposed class . . . geographic dispersion of class members, and whether proposed members of the class will be able to pursue remedies on an individual basis.'"  *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 167 (E.D. Mich. 2006) *aff'd and remanded*, 511 F.3d 554 (6th Cir. 2007) (quoting *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 74 (D.N.J. 1993)).  "In keeping with the notion that the standard is not strictly numerical, however, there is no need to prove the exact number of class members.  'Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'"  *Curry v. SBC Communications, Inc.*, 250 F.R.D. 301, 310 (E.D. Mich. 2008) (quoting *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D.Cal. 1982)); *see also* 1 Newberg on Class Actions § 3:5 ("While the plaintiff has the burden of showing that joinder is impracticable, a good-faith estimate should be sufficient when the number of class members is not readily ascertainable.").

> The Sixth Circuit has held:

> "[T]he exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative." *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D.Ohio 2001) (quotation and citations omitted); *see also* 7A Charles Alan Wright & Arthur R. Miller, Mary Kay Kane, Federal Practice And Procedure § 1762 (3d Ed.2001) (observing that the party seeking class certification "bear[s] the burden of showing impracticability and mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)").

*Golden v. City of Columbus*, 404 F.3d 950, 965-66 (6th Cir. 2005).  In *Golden*, the Court affirmed the district court's denial of class certification to a plaintiff who sought to certify a class of city tenants who had their water service terminated due to their landlord's indebtedness.  The Court reasoned that the plaintiff failed to establish impracticality of joinder.  The number of renters in the city was 150,000, but the plaintiff did not claim that all of them should be included in the class.

-11-

Here, the plaintiff has not identified the precise size of the class.  However, unlike the plaintiff in *Golden*, the plaintiff here has submitted evidence from which class size may be estimated.  Even a conservative estimate puts the class size in the hundreds of thousands.  The defendant's Rule 30(b)(6) witness estimated that the defendant's business involved over fifty percent refinancing transactions.  *See* Pl.'s Mot., DEPAPPEND0127, Phillip Schreiber Dep. 151-52.  Assuming that the vast majority of these refinancing customers were eligible for a reduced premium, and using the transaction codes furnished by the defendant as a proxy, out of 848,430 transactions identified by the defendant in their second response to interrogatories, it appears that under twelve percent were coded as mortgage refinance and nine percent as mortgage reissue.  The defendants claim that the reliability of the transaction codes is subject to question, but they are data furnished by the defendant itself.  Assuming that the actual number of mortgage refinance transactions was fifty percent, twenty-nine percent of those transactions were not correctly coded as such, or nearly 250,000 such individuals.  Even if only half of these turn out to be overcharged, this number is obviously large enough to make joinder impractical.  *See Curry*, 250 F.R.D. at 310 (noting that "[i]n most cases, a class in excess of forty members will do" (collecting cases)); 1 Newberg on Class Actions § 3:5 (stating that impracticality of joinder is "obvious" when the plaintiffs number in the hundreds or thousands).  The plaintiff has satisfied the numerosity requirement.


### 2. Common question of law or fact

Commonality is the second prerequisite for class certification, which simply demands that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This provision does not mandate that *all* questions of law and fact raised in the complaint are common.  Rather,

"Rule 23(a) simply requires a common question of law or fact." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). On the other hand, generalized or abstract commonality will not suffice. *See Sprague*, 133 F.3d at 397. "What we are looking for is a common issue the resolution of which will advance the litigation." *Ibid.*

> The plaintiff proposes the following common questions of law and fact:
>
> a) whether Defendant was obligated to charge title insurance rates that do not exceed title insurance premium rates on file;
>
> (b) whether Defendant was obligated to charge title insurance premium rates that are lower than original issue rates when the transaction involved a mortgage refinancing, as opposed to an original purchase;
>
> (c) whether Defendant in fact provided premium discounts when the transaction involved a mortgage refinancing;
>
> (d) whether Defendant has been unjustly enriched by the retention of unlawful premiums;
>
> (e) whether declaratory judgment is appropriate; and
>
> (f) whether Plaintiff and the members of the Class have sustained damages and, if so, what is the proper measure of those damages.

Pl.'s Mot. ¶ 3. The defendant does not appear to contest this ground, and for good reason. Several of these questions are common questions that would advance the litigation. *See Daffin*, 458 F.3d at 552 (holding that commonality was satisfied when interpretation of a warranty contract was at issue). The plaintiff has satisfied this ground.

### 3. Typicality

The third prerequisite for class certification is typicality. Fed. R. Civ. P. 23(a)(3) (providing that "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class"). A named plaintiff's claim is typical if "it arises from the same event or practice or

course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082 (internal quotation marks omitted); *see also Sprague*, 133 F.3d at 399 (stating that the essence of typicality boils down to the notion that "[a]s goes the claim of the named plaintiff, so go the claims of the class"). Typicality requires that a "'sufficient relationship exist[] between the injury to the named plaintiff and conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *Sprague*, 133 F.3d at 399). Although the named plaintiffs' claims must fairly encompass the class members' claims, they need not always involve the same facts or law. *See Sprague*, 133 F.3d at 399; *Senter*, 532 F.2d at 525 n. 31 (holding that "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law"). "'The test for typicality, like commonality, is not demanding.'" *Curry*, 250 F.R.D. at 311 (quoting *Sprague*, 133 F.3d at 415 (Martin, J., dissenting)).

In addition, the Sixth Circuit has explained that the commonality and typicality requirements "'tend to merge.'" *Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004) (quoting *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998)). Together they "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Rutherford*, 137 F.3d at 909.

In 2006, the Sixth Circuit decided *Daffin v. Ford Motor Company*, affirming a district court that certified a class of automobile owners challenging a design defect in the throttle body assembly

of the vehicle.  The defendant argued that the named plaintiff was not typical of the class because her throttle stuck and she had it worked on, while other plaintiffs had vehicles that did not manifest the defect.  The Sixth Circuit rejected this argument and found that typicality was satisfied:

> Daffin is typical because her car has the same defective throttle body assembly as the other class members. . . . The mere fact that Daffin's throttle body assembly stuck, while other class members' throttles have not stuck, does not render Daffin atypical. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir. 1976).  Daffin and the other class members' claims arise from the same practice (delivery of non-conforming vehicle), the same defect (the allegedly defective throttle body assembly), and are based on the same legal theory (breach of express warranty). Typicality is satisfied despite the different factual circumstances regarding the manifestation of the accelerator sticking and Ford's attempts to remedy manifested sticking.
>
> Ford argues that an owner who has not experienced accelerator sticking and has not sought repair for the problem cannot "prove" an express warranty claim under the "repair or replace" warranty.  The court may ultimately accept or reject this reading of the contract, but a court should not "conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).  Thus, whether the class members can win on the merits of the issue common to the class is not a factor in determining whether Daffin's claim is typical.

*Daffin*, 458 F.3d at 552-53.  Similarly, in this case, the plaintiff is typical because he purchased title insurance from the defendant and arguably could qualify for a lower rate because he had obtained title insurance in the recent past.  As addressed below, the precise contours of his case are perhaps atypical; however, he has the same relationship to the defendant, the same injury, and the same legal theory.

The defendant argues that the plaintiff's claim is unique in several ways given the discharge of the mortgage in his property's title record and his affidavit stating that there was no other lien on the property.  As the plaintiff points out, a district court in the Eastern District of Pennsylvania recently analyzed, and rejected, an argument similar to defendant's, concluding that a defendant who

-15-

failed to present evidence of title insurance at his refinance loan closing nonetheless was typical of other class members because his "claims arise from the identical practice or course of conduct that gives rise to the claims of the class members, namely, [the title company]'s practice of charging a non-discounted rate unless the purchaser presented evidence of previous title insurance and regardless of whether the title search revealed a prior mortgage or refinancing." *Alberton*, 247 F.R.D. at 477. The plaintiff has satisfied the typicality requirement.

### 4. Adequacy of representation

The fourth prerequisite is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also In re Am. Med. Sys.*, 75 F.3d at 1083. "Adequate representation" invokes two inquiries: (1) whether the class counsel are "qualified, experienced and generally able to conduct the litigation" and (2) whether the named plaintiffs themselves are capable of advancing the class claims or have interests that are "antagonistic" to the other class members. *Stout*, 228 F.3d at 717. "Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to vigorously prosecute the interests of the class." *Ibid.* (internal quotations omitted). As the Sixth Circuit has noted, "[t]he adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *In re Am. Med. Sys.*, 75 F.3d at 1083.

The defendant does not dispute that class counsel is qualified to conduct the litigation, and the Court see no basis for a contrary finding. However, the class representative himself has some responsibility to supervise the activity of class counsel and exercise independent judgment when making decisions critical to the conduct of the litigation. "Class representatives are expected to

-16-

protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). This requires that the class representatives exercise some oversight of the class counsel so as to avoid simply turning the conduct of the case over to the class counsel." *Olden v. Gardner*, 294 F. App'x 210, 220 (6th Cir. Sept. 18, 2008) (citing *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 615 (S.D. Ohio 2003)).

The defendant argues that adequacy is not satisfied due to "[t]he unique facts and circumstances surrounding Hoving's transaction" and his "contradictory sworn statements and deposition testimony." Def.'s Resp. at 13 n. 8. The Court shares the concern that Mr. Hoving's effort at setting up a do-it-yourself trust establishes some doubt about whether Hoving had the authority to grant the refinancing mortgage on the property and close the loan at the time. "To have standing to sue as a class representative it is essential that a plaintiff . . . be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) (citations omitted); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *Schlesinger*, 418 U.S. at 216).

But the Court's concern runs deeper. Mr. Hoving testified that in attempting to set up this trust, he filled out the papers himself; he was unfamiliar with the process; he sought no legal advice, despite the fact that his sister is an attorney who served in the Judge Advocate General Corps; he conveyed his property to complete strangers with whom he had never spoken and whom he had never met; he paid a fee, but kept no copies of the documents or a record of payment; and, unsurprisingly, he was defrauded. This display of breathtaking imprudence by Mr. Hoving casts grave doubt over his ability to perform the functions of a lead plaintiff in major class action

litigation. The Court concludes that the plaintiff has not established that Mr. Hoving can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

### B. Rule 23(b) requirements

In addition to the four prerequisites in Fed. R. Civ. P. 23(a), the plaintiff must satisfy one of the subsections in Fed. R. Civ. P. 23(b). *Amchem Products*, 521 U.S. at 614; *Sprague*, 133 F.3d at 397. The plaintiff relies on subsections (b)(2) and (b)(3), but the major portions of the parties' arguments are directed to whether the plaintiff has satisfied the requirements of Rule 23(b)(3).

Rule 23(b)(3) allows a court to certify a class action if

the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The rule "requires that (1) questions common to the class predominate over questions affecting only individual members, and (2) class resolution is superior to alternative methods for adjudicating the controversy." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 535 (6th Cir. 2008).

### 1. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod.*, 521 U.S. at 623. Although Rule 23(b)(3)'s predominance requirement shares some similarities to Rule 23(a)(2)'s commonality requirement, *see Ball*, 385 F.3d at 728, it requires more: "The commonality requirement is satisfied if there is a single factual or legal question common to the entire class[, while t]he predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (citing *Am. Med. Sys.*, 75 F.3d at 1080).

"[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Beattie*, 511 F.3d at 564 (internal quotations omitted). Moreover, the Sixth Circuit has "never required a precise mathematical calculation of damages before deeming a class worthy of certification." *Scrap Metal Antitrust Litigation*, 527 F.3d at 535 (citing *Olden*, 383 F.3d at 508). "[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Beattie*, 511 F.3d at 564 (internal quotations omitted).

Two other courts have addressed in detail the propriety of certifying a class action on unjust enrichment claims. These courts reach different results, applying the Rule 23(b)(3) inquiry in different ways. Certifying a class, one judge of the Western District of Pennsylvania discussed the elements of an unjust enrichment claim under Pennsylvania law and concluded that the core question is "whether the enrichment of the defendant is unjust." *Slapikas*, 250 F.R.D. at 248 (quoting *Pennsylvania State Employees Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 331 (M.D. Pa. 2005)). The court then reasoned:

> This claim is common to all the putative class members. Any putative class members who were overcharged when they were entitled to a discounted rate would

-19-

> be in exactly the same position. First American followed the same standard
> procedures, used the same standard forms, and calculated the applicable rates in
> exactly the same way for each putative class member.  First American also
> interpreted the evidentiary provisions of the Rate Manual in the same way. A
> determination whether an overcharge by First American is "unjust" is common to all
> putative class members and appropriate for class treatment.

*Ibid.*

In contrast, in an unpublished opinion, a judge in the Northern District of Ohio declined to certify a class on an unjust enrichment count, reasoning that even if the unjust enrichment elements are common to all class members, the defendant "would be permitted to defend itself by introducing evidence regarding whether, in that specific transaction, the existence of the discount was disclosed." *Chesner*, 2008 WL 553773, at *14.  Although these courts did not apply the law of the states implicated in this litigation, there does not appear to be any meaningful distinction between the unjust enrichment elements of Pennsylvania and Ohio and the class states.

Under Michigan law, the elements of unjust enrichment are: "'the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain.'" *Michigan Educ. Employees Mut. Ins. Co. v. Morris*, 460 Mich. 180, 198, 596 N.W.2d 142, 151 (1999) (quoting *Moll v. Wayne Co.*, 332 Mich. 274, 278-279, 50 N.W.2d 881 (1952)).  There must be more than a benefit received by a party; the party "is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it."  *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652, 663 (1991).  As the Michigan Court of Appeals has explained, it may be necessary to impose a quasi-contract to avoid a windfall, but this should not be done *simply* because a party has received a benefit:

> A person who has been unjustly enriched at the expense of another is required to
> make restitution to the other, Restatement Restitution, § 1, p. 12. The process of
> imposing a "contract-in-law" to prevent unjust enrichment is an activity which

-20-

should be approached with some caution. . . . Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor, Restatement Restitution, supra, comment c, p. 13. A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons, Restatement, supra, § 1112, p. 461. *See Buell v. Orion State Bank*, 327 Mich. 43, 56, 41 N.W.2d 472 (1950).

*Estate of McCallum*, 153 Mich. App. 328, 335, 395 N.W.2d 258, 261 (1986).

Colorado law describes essentially the same elements as Michigan law. *Ninth Dist. Production Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788, 794-95 (Colo. 1991) ("Unjust enrichment . . . is an equitable doctrine that permits recovery when a plaintiff shows (1) that a benefit was conferred on the defendant by the plaintiff, (2) that the benefit was appreciated by the defendant, and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment." (internal quotations omitted)). Similarly, in Missouri, "[t]he elements of unjust enrichment are: '(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; [and] (3) that it would be unjust to allow the defendant to retain the benefit.'" *Miller v. Horn*, 254 S.W.3d 920, 924 (Mo. Ct. App. 2008) (quoting *S & J, Inc. v. McLoud & Co.*, 108 S.W.3d 765, 768 (Mo. Ct. App. 2003)). New Jersey articulates the elements differently, *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 110, 922 A.2d 710, 723 (2007) ("To establish a claim for unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519, 526 (1994))),

-21-

but has been treated by courts as adopting essentially the same elements as Michigan, *see Powers v. Lycoming Engines*, 245 F.R.D. 226, 230-31 & n. 12 (E.D. Pa. 2007).

Arizona and Washington law articulate the elements a bit differently. Arizona employs a five-part test, *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 541, 48 P.3d 485, 491 (Ariz. Ct. App. 2002) (holding that "[t]o establish a claim for unjust enrichment, a party must show: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy"), while Washington does not employ elements but simply relies on more generalized notions of equity, *Lynch v. Deaconess Medical Center*, 113 Wash. 2d 162, 165, 776 P.2d 681, 683 (1989) (holding that "the equitable principle of unjust enrichment . . . simply states that one should not be 'unjustly enriched at the expense of another.' (quoting *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 49 Wash. 2d 363, 367, 301 P.2d 759, 761 (1956))); *see also Powers*, 245 F.R.D. at 231 & n. 16. Under each of these states' laws, the plaintiff likely will have to show more than that the defendant obtained a benefit from him, but that the retention of the benefit is "unjust" in some way.

One court, after surveying all of these laws (and others), found that there were "few real differences" between the states' laws. *Powers*, F.R.D. at 231. The Court agrees. Even the defendant tacitly acknowledges the congruity among the states, as it cites cases from each of the class states for a single proposition of unjust enrichment law. *See* Def.'s Resp. at 14; *c.f. id.* at 17 (arguing that differences in *rate filings* between states preclude a multi-state certification). Other courts have concluded that the differences between states has posed little barrier to the certification of multi-state unjust enrichment class actions. *See, e.g.*, *Powers*, 245 F.R.D. at 230-31; *Schumacher*

-22-

*v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D. S.D. 2004) (noting that the "universal thread throughout all common law causes of action for unjust enrichment" is a "focus on the gains of the defendants, not the losses of the plaintiffs"); *In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007) (concluding that variations among states' unjust enrichment laws "do not significantly alter the central issue or the manner of proof" where the defendant allegedly unjustly acquired additional revenue by virtue of an anti-competitive premium on the price of the acquired company); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 518 (E.D. Mich. 2003) (characterizing the standards of unjust enrichment around the country as "virtually identical").

The plaintiff's theory is that the defendant had a systematic scheme to overcharge individuals for title insurance, a claim that the defendant denies. Each of the class states require that the defendant file its manual of rates with the state agency charged with the regulation of insurance. Ariz. Rev. Stat. Ann. § 20-376(A) ("Every title insurer shall file with the director its schedules of fees, every manual of classifications, rules and plans pertaining thereto, and every modification of any of the foregoing that it proposes to use concerning its title insurance forms and products in this state. Every filing shall include a proposed effective date and shall indicate the character and extent of the coverage or service contemplated."); Colo. Rev. Stat. § 10-4-405(1) ("With respect to type I kinds of insurance as defined in section 10-4-401(3)(a), every insurer shall file with the commissioner every manual of classifications, rules, and rates, every rating plan, and every modification of any of the foregoing which it proposes to use in this state."); Mich. Comp. Laws § 500.2406(1) ("[E]very insurer shall file with the commissioner every manual of classification, every manual of rules and rates, every rating plan, and every modification of any of the foregoing that it

proposes to use. Every such filing shall state the proposed effective date thereof and shall indicate the character and extent of the coverage contemplated."); N.J. Rev. Stat. § 17:46B-42(a) ("Every title insurance company shall file with the commissioner its schedule of fees, every manual of classifications, rules and plans pertaining thereto, and every modification of any of the foregoing which it proposes to use in this State. Every such filing shall state the proposed effective date thereof, and shall indicate the character and extent of the coverage contemplated."); Wash. Rev. Code § 48.29.140(2) ("Each title insurer shall forthwith file with the commissioner a schedule showing the premium rates to be charged by it. Every addition to or modification of such schedule or of any rate therein contained shall likewise be filed with the commissioner, and no such addition or modification shall be effective until expiration of fifteen days after date of such filing."); *id* at 48.29.147(1) ("Every title insurer shall, before using, file with the commissioner every manual of title insurance rules and rates, rating plan, rate schedule, minimum rate, class rate, and rating rule, and every modification of any of the filings under this subsection which it proposes.")

The states also require that the defendant comply with its filings.  Ariz. Rev. Stat. Ann. § 20-379(A) ("No title insurer or title insurance agent may deviate from its rates that are in effect for the title insurer or title insurance agent pursuant to § 20-376."); Colo. Rev. Stat. § 10-11-118(2) ("No title insurance company or title insurance agent shall use any rate or fee in the business of title insurance prior to its effective date, and no rate or fee increase or decrease shall apply to title policies or services that have been contracted for prior to such effective date."); Mich. Comp. Laws § 500.2412 ("No insurer shall make or issue a contract or policy except in accordance with filings which are in effect for said insurer as provided in this chapter. . . ."); N.J. Rev. Stat. § 17:46B-42(d) ("[N]o title insurance company or agent of a title insurance company shall charge any fee for any

-24-

policy or contract of title insurance except in accordance with filings or rates which are in effect for said title insurance company as provided in this act."); Wash. Rev. Code § 48.29.147(1) ("Every title insurer shall, before using, file with the commissioner every manual of title insurance rules and rates, rating plan, rate schedule, minimum rate, class rate, and rating rule, and every modification of any of the filings under this subsection which it proposes.").

In Missouri, the law is in flux. The statute states:

> No title insurer, may charge any rates regulated by the state after January 1, 2001, except in accordance with the premium rate schedule and manual filed with and approved by the director in accordance with applicable statutes and regulations governing rate filings.

Mo. Ann. Stat. § 381.032 (2001). In 2000, senate bill 894 was enacted, which purported to repeal this section (along with fifty others). S.B. 894, 90th Leg. (Mo. 2000). The Missouri Supreme Court invalidated this legislation as violating a portion of the state's constitution requiring that bills have clear titles. *Home Builders Ass'n of Greater St. Louis v. State*, 75 S.W.3d 267, 272 (Mo. 2002); *see also* Mo. Const. art. 3, § 23. In 2007, the legislature attempted to repeal the statute once more, effective January 1, 2008. S.B. 66, 94th Leg. (Mo. 2007). In early 2008, the Missouri Department of Insurance promulgated a regulation that imposed the filing requirement on insurers. Mo. Code Regs. Ann. tit.20, § 500-7.100 (2008) ("Every title insurer licensed in Missouri shall file with the director as required by section 381.181, RSMo 1994, a completed title insurance rate reporting form for the risk rates it proposes to use in each county of this state and each city not within a county in this state."). The regulation expired July 14, 2008. Thus, it appears that from at least 2002 through the end of 2007, Missouri required rate filing.

There is no dispute that the defendant filed its rate in each state. There is evidence in the record that the defendant issued instructions to its agents to advise customers of their entitlement

to the discounted rates and assume a prior title policy was issued when a loan is sought for the purpose of refinancing a prior mortgage. *See* Pl.'s Mot., Ex 13-18. To be sure, there is no evidence supporting the plaintiff's claim that the defendants actually and systematically overcharged, but the Court is not to inquire into the merits when deciding class certification. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Daffin*, 458 F.3d at 553. If the plaintiff's theory is ultimately supported with evidence, a jury could conclude that the defendant was unjustly enriched no matter what the particular facts of the individual borrower's case (subject, of course, to individual determinations of liability and defenses). In such a case, class certification is appropriate, as the factual issue of any scheme employed by the defendant and the legal issues involving interpretation of the rate manuals and determination whether the defendant's custom or policy constitutes unjust enrichment predominate over individualized inquiries.

The defendant's argument that it is entitled to show that individuals may have been notified and nonetheless waived the discounted rate does not suggest that common issues fail to predominate. As to that defense, the Court is inclined to adopt the approach of Judge Carr from the Northern District of Ohio, who observed in a similar case:

> I am inclined, though, to take the view that any homeowner who did not get the discount lacked knowledge. As noted in the preceding footnote, it is simply contrary to human experience - and the human impulse - to throw away, rather than hang on to, one's money, and to contend that any homeowner with knowledge decided to forego the discount. Adopting this viewpoint will eliminate the need for individual determination of whether the homeowner knew about the discount.

*Randleman*, 251 F.R.D. at 280 n.8.

Based on the weight of authority, the Court concludes that the common issues predominate.

### 2. Superiority

Because class issues predominate, "class resolution is superior" to resolving the claims through individual litigation.  Fed. R. Civ. P. 23(b)(3); *Bobbitt v. Academy of Court Reporting, Inc.*, 249 F.R.D. 488, *as amended*, 2008 WL 2558019 (E.D. Mich. 2008).  When, as here, individuals plaintiffs would have little financial incentive to bring individual suits, class treatment is appropriate.

*Amchem Products, Inc.*, 521 U.S. at 617 (noting that one of the purposes behind Rule 23(b)(3) was "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all" (internal quotations omitted)); *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005).  Class treatment is a superior method of adjudicating the dispute.

### 3. Rule 23(b)(2)

Rule 23(b)(2) authorizes a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Certification under this rule is appropriate only when declaratory or injunctive relief "predominate" over claims for monetary damages.  *Reeb v. Ohio Dept. of Rehabilitation and Correction*, 435 F.3d 639, 651 (6th Cir. 2006).  The Sixth Circuit has held that in the Title VII and the Equal Credit Opportunity Act (ECOA) contexts, class actions seeking both individual damages and injunctive relief are inappropriate for Rule 23(b)(2) certification.  *Id.* at 651; *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 450 (6th Cir. 2002); *Curry*, 250 F.R.D. at 314.  However, the Sixth Circuit was persuaded in large part because in both the ECOA and Title VII context, a fee-shifting provision

exists that provides some incentive for individual claims.  *See Reeb*, 435 F.3d at 651; *Coleman*, 296

F.3d at 449.  Outside of these contexts, the Sixth Circuit has held that when both Rule 23(b)(2) and

(b)(3) classes have been certified:

> "Disputes over whether [an] action is primarily for injunctive . . . relief rather than
> a monetary award neither promote the disposition of the case on the merits nor
> represent a useful expenditure of energy.  Therefore, they should be avoided. If the
> Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been
> requested, the action usually should be allowed to proceed.  Those aspects of the case
> not falling within Rule 23(b)(2) should be treated as incidental. *Indeed, quite
> commonly they will fall within Rule 23(b)(1) or Rule 23(b)(3) and may be heard on
> a class basis under one of those subdivisions.*  Even when this is not the case, the
> action should not be dismissed."

*Olden*, 383 F.3d at 510-11 (quoting 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,

Federal Practice and Procedure, 2d. § 1775).

> Count Three of the plaintiff's complaint seeks declaratory relief and requests
>
> a permanent injunction requiring Defendant to notify in writing all owners of
> residential real estate who, in the context of a refinance transaction, paid or may pay
> in the future premiums for the purchase of title insurance from Defendant of: (1) the
> conditions upon which they may qualify for a reissue rate, (2) the reduced amount
> of that rate, and (3) the exact price of the officially rate scheduled premium [sic] for
> a 'lender's' title policy which corresponds to the coverage amount being written.

Compl. ¶ 58.  The plaintiff alleges that the defendant "refused to act on grounds that apply generally

to the class" and seeks injunctive relief applicable to the class as a whole.  *See* Fed. R. Civ. P.

23(b)(2).  Class certification under Rule 23(b)(3) for the money damages claims would lead to

certification under 23(b)(2) for declaratory relief.  *Olden*, 383 F.3d at 510-11.

* * * * * * * * *

The Court finds that but for the presence of a qualified class representative, the claims set

forth in the complaint are appropriate for adjudication under the multi-state class proposed by the

-28-

plaintiff.  However, because the plaintiff has not satisfied the requirement in Federal Rule of Civil Procedure 23(a)(4), the motion to certify the class will be denied.

III.

The defendant has filed a motion to amend its answer to include two defenses: that the plaintiff engaged in inequitable conduct by conveying his property to a trust, illegally discharged the prior mortgage, entered into a new loan transaction without authority, and signed an affidavit that there were no encumbrances on the land save the home equity line of credit; and the plaintiff failed to exhaust his administrative remedies.  The defendant says that during class certification discovery, it came across information of which it was unaware when it filed its answer, explaining that prompted by the deposition of Mr. Hoving and Transnation representative Marcy Welburn, a thorough public records search was performed and two relevant facts were learned.  First, it was discovered that Mr. Hoving had placed his property in a trust and the trust had caused a discharge of mortgage to be entered.  Second, the defendant is no longer sure that the plaintiff even owns the property and may have had no legal right to mortgage it in 2006.

The plaintiff opposes the motion, arguing that the evidence is not "new" and should have been discovered before the refinance loan closing if the defendant had performed a proper title search.  The plaintiff also alleges futility.

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleadings at this stage of the proceedings only after obtaining leave of court.  Although the Rule provides that "leave of court shall be freely granted when justice so requires," leave may be denied on the basis of undue delay, bad faith by the moving party, repeated failure to cure defects by previously-allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party.  *Forman*

-29-

*v. Davis,* 371 U.S. 178, 182 (1962); *Duggins v. Steak & Shake, Inc.,* 195 F.3d 828, 834 (6th Cir. 1999); *Fisher v. Roberts,* 125 F.3d 974, 977 (6th Cir. 1997).  "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 458-459 (6th Cir. 2001).

The Rule does not establish a deadline within which a party must file a motion to amend. *See Lloyd v. United Liquors Corp*., 203 F.2d 789, 793 (6th Cir. 1953) (reviewing a district court's denial of a motion to amend after the entry of summary judgment).  However, the party seeking to amend should "act with due diligence if it wants to take advantage of the Rule's liberality." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).  Thus, where "amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade*, 259 F.3d at 459.  Courts are especially inclined to deny a motion brought under Rule 15 "if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them."  6 Charles Alan Wright *et al.*, Federal Practice and Procedure § 1487 (2d ed. 1990); *see Wade*, 259 F.3d at 459 (finding undue delay where the plaintiff knew the facts forming the basis of the amended claims but failed to plead the claims in the original complaint).  However, the Sixth Circuit "has required 'at least some significant showing of prejudice' to deny a motion to amend based solely upon delay." *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (per curiam)).

The Sixth Circuit has held that even "apparent 'cat and mouse' class action gamesmanship" does not qualify as bad faith.  *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2001).  Despite the plaintiff's allegations, there is absolutely no evidence the defendant is proceeding in bad faith.

Nor has there been undue delay. The defendant filed its motion to amend less than four months after it filed its original answer. It is questionable whether, as the plaintiff contends, the defendant should have been aware of the facts surrounding its new defenses of estoppel and unclean hands prior to the deposition of the plaintiff. At most, it was negligent for the defendant not to have conducted an exhaustive inquiry before issuing the title policy. That does not show that the defendant chose to omit facts when it filed its original answer. *Cf. Wade*, 259 F.3d at 459. However, it is completely unclear whether the defendant should have asserted any exhaustion defense in the original answer, as it is unknown when this defense first became apparent to it.

The plaintiff would not be prejudiced by the amendment. The motion was filed before the motion for class certification, and the briefing of the class certification motion has addressed the issues raised by the new defenses. *See* Pl.'s Br. in Supp. of Mot. at 7 n. 24. The litigation is still in its early stages and full discovery had not even commenced.

Finally, the defenses of estoppel and unclean hands, if proven at trial, are likely to be meritorious. The doctrine of unjust enrichment is equitable in nature, *Kammer Asphalt Paving Co., Inc. v. East China Tp. Schools*, 443 Mich. 176, 185-86, 504 N.W.2d 635, 640 (1993), and one seeking to invoke equity must do so with "clean hands," *see McFerren v. B & B Inv. Group*, 253 Mich. App. 517, 522-23, 655 N.W.2d 779, 783 (2002). However, "[t]he misconduct which will move a court of equity to deny relief must bear a more or less direct relation to the transaction concerning which complaint is made. Relief is not denied merely because of the general morals, character or conduct of the party seeking relief." *McKeighan v. Citizens Commercial & Sav. Bank of Flint*, 302 Mich. 666, 671, 5 N.W.2d 524, 526 (1942). Here, even if the plaintiff had intended a fraud when he transferred the property to the trust, this fact alone probably would not suffice to deny

-31-

him equitable relief on the distinct title insurance transaction.  However, it may provide grounds for estoppel, and certainly could convince a factfinder that the defendant's receipt of the funds was equitable under the specific facts of the plaintiff's case.  This amendment is not futile.

The merits of the exhaustion of administrative remedies defense is less clear.  The defendant does not cite any legal authority for such an argument, particularly in light of the fact that the plaintiff's sole remaining count is unjust enrichment, and not a statutory cause of action.  One district court found that Pennsylvania law does not require exhaustion, and it certified this issue for interlocutory appeal, which was denied by the Third Circuit.  *Slapikas v. First American Title Ins. Co.*, 250 F.R.D. 232, 238 (W.D. Pa. 2008).  In light of the apparent lack of merit in this claim and the fact that the defendant should have been able to plead this in its original answer, the defendant will not be permitted to amend to add a defense of exhaustion of administrative remedies.

IV.

The Court finds that the plaintiff has not established one of the elements of Rule 23(a), and therefore its motion for class certification must be denied.  Absent class certification, it is doubtful that the plaintiff will be able to meet the amount-in-controversy requirements for diversity jurisdiction over his state law claim, and therefore it is doubtful that an amendment to the complaint to substitute a suitable class representative can save the present lawsuit.  *See* 28 U.S.C. § 1332(a), (d).  In light of the liberal policy of amendment of pleadings, the balance of the factors favors amendment of the defendant's answer with respect to paragraphs 29 through 31, but not with respect to its proposed exhaustion of administrative remedies defense.

Accordingly, it is **ORDERED** that the plaintiff's motion for class certification [dkt #62] is **DENIED**.

-32-

It is further **ORDERED** that the defendant's motion to amend its answer [dkt #46] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that plaintiff's motion to strike [dkt. #80] is **DENIED AS MOOT**.

It is further **ORDERED** that the plaintiff show cause in writing **on or before April 15, 2009** why this matter should not be dismissed for want of jurisdiction.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 30, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 30, 2009.

s/Lisa M. Ware
LISA M. WARE

---